IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:22-cv-00009-WCM

| | |
|---|---|
| GERALD R. LASCHOBER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CURTIS A. COCHRAN and ) <br> CHARLES R. ROBINSON, ) <br> ) <br> Defendants. ) <br> _____ ) | ORDER |

This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. 30).[1]

## I. Relevant Procedural Background

On December 13, 2021, Gerald R. Laschober ("Plaintiff") filed a *pro se* complaint in the District Court of Swain County, North Carolina against the Sheriff of Swain County Curtis A. Cochran ("Sheriff Cochran") and Swain County Deputy Sheriff Charles R. Robinson ("Deputy Robinson")[2] (collectively "Defendants") asserting claims arising out of interactions between law

---

[1] The parties have consented to a United States magistrate judge conducting all proceedings in this case, including trial and the entry of a final judgment. Docs. 19, 20.

[2] In his October 2, 2023 Declaration, Deputy Robinson states that he is currently the Chief of Police of the Bryson City Police Department. Doc. 31-2 at ¶ 2.

1

enforcement and Plaintiff in December of 2018.[3] Doc. 1-1. Defendants removed the case to this Court on January 12, 2022. Doc. 1.

On May 11, 2022, the Court dismissed Plaintiff's claims against Defendants in their official capacities, as well as Plaintiff's Anti-Swatting Act and libel claims. Doc. 9 at 6. Remaining are Plaintiff's claims against Defendants in their individual capacities under 42 U.S.C. § 1983 and 42 U.S.C. § 1985. Id.

On April 26, 2023, counsel appeared for Plaintiff. Doc. 24.

On October 9, 2023, Defendants filed the Motion for Summary Judgment. Doc. 30. Plaintiff responded, Defendants replied, and Plaintiff submitted a "late filed" affidavit, which the Court accepted. Docs. 38, 40, 42, January 30, 2024 Text-Only Order.

On February 5, 2024, the undersigned conducted a hearing on the Motion for Summary Judgment and took the matter under advisement. This order now follows.

## II. Legal Standard

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment upon a showing "that there is no genuine

---

[3] On March 16, 2021, Plaintiff filed a separate action that was removed to this Court on April 16, 2021. Gerald R. Laschober v. Aaron C. Ammons and Joshua Freeman, 1:21-cv-00107-MR-WCM. Judgment in Ammons was entered on December 4, 2023.

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the Court construes "all facts and reasonable inferences drawn therefrom in favor of the non-moving party." Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).

### III. Materials Considered

#### A. Plaintiff's Materials

Plaintiff has submitted the following materials: three (3) December 16, 2018 video recordings from Plaintiff's security cameras (Docs. 38-1, 38-2, 38-3); a declaration of Alan "Rocky" Sampson ("Sampson") (Doc. 38-6); an audio recording of a conversation between Plaintiff, Sampson, and Kyle Huskey ("Huskey") (Doc. 38-4); a declaration of Plaintiff (Doc. 38-5); and an Affidavit of Shannon R. Ashe ("Agent Ashe"), an Assistant Special Agent in Charge with the North Carolina State Bureau of Investigation ("SBI") (Doc. 42-1).

Defendants do not oppose the Court's consideration of these materials.

#### B. Defendants' Materials

Defendants have submitted the following materials: declarations signed

3

by Deputy Robinson (Doc. 31-2) and Sheriff Cochran (Doc. 31-3); a search warrant for a cell phone number ending in 5549 (the "First Search Warrant," Doc. 31-4); a search warrant for Plaintiff's cell phone number (the "Second Search Warrant," Doc. 31-5); a search warrant for Huskey's cell phone number (the "Third Search Warrant," Doc. 31-6); a search warrant for Plaintiff's residence (the "Fourth Search Warrant," Doc. 31-7); excerpts from a deposition given by Plaintiff in Ammons, (Docs 31-8 & 31-9); and a warrant for Plaintiff's arrest (the "Arrest Warrant," Doc. 31-10).

The First, Second, Third, and Fourth Search Warrants (collectively, the "Search Warrants") were supported by statements of probable cause that were sworn to and signed by Agent Ashe. Therein, Agent Ashe described statements that were allegedly made by Huskey and Huskey's girlfriend Nerissa Woodard ("Woodard") regarding Plaintiff. These statements had been reported to Agent Ashe by Deputy Robinson, Swain County Deputy Sheriff A.R. Holland ("Deputy Holland"), and Special Agent C.B. Green ("Agent Green") of the Bureau of Alcohol, Tobacco, and Firearms ("ATF").

Plaintiff asserts that the Court should disregard in their entirety the statements attributed to Huskey and Woodard and various law enforcement officers' subsequent descriptions of those statements, along with statements contained in Deputy Robinson's Declaration, because they constitute hearsay. Doc. 38 at 7–8. Additionally, Plaintiff contends that the contents of certain text

4

messages should not be considered because the messages themselves have not been produced. Id. at 8. Finally, Plaintiff asks the Court to deny Defendants' request to take judicial notice of the Search Warrants. Id.

"Federal Rule of Evidence 801(c) defines hearsay as 'a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement.'" United States v. Davis, 918 F.3d 397, 401 (4th Cir. 2019). Generally, hearsay evidence that is inadmissible at trial cannot be considered on a motion for summary judgment. Lyons v. City of Alexandria, 35 F.4th 285, 290, n.4 (4th Cir. 2022) (citing Md. Highways Contractors Ass'n v. Maryland, 933 F.2d 1246, 1251 (4th Cir. 1991)). However, "an out of court statement is not hearsay if it is offered for the limited purpose of explaining why a government investigation was undertaken." United States v. Laudermilk, 576 F. App'x 177, 180 (4th Cir. 2014) (quoting United States v. Love, 767 F.2d 1052, 1063 (4th Cir. 1985)).

Here, the Court is not persuaded that this information to which Plaintiff objects should be disregarded. The statements by the various law enforcement officers have not been offered for their alleged veracity but instead to explain why Plaintiff was being investigated. Further, search warrants and "affidavits for search warrants are judicial records," Balt. Sun Co. v. Goetz, 886 F.2d 60, 64 (4th Cir. 1989) and the Court may take judicial notice of them. See Starr

5

Indem. & Liab. Co. v. United States, No. CCB-18-3326, 2019 WL 4305529, at *5 n.4 (D. Md. Sept. 11, 2019) (citing Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009)) ("the court may take judicial notice of public records, such as affidavits for search warrants").

## IV. Factual Background

The forecast of evidence, taken in the light most favorable to Plaintiff, is as follows:

### A. Events Prior to December 15, 2018

For over 18 years, Plaintiff has managed the Cooper Creek Trout Farm (the "Trout Farm"). Doc. 38-5 at ¶ 4. He resides on the Trout Farm property. Id. at ¶ 6.

In October of 2015, Plaintiff had a nighttime confrontation with a group of hunters who had come onto the Trout Farm property. The group included certain Swain County deputies. Doc. 38-5 at ¶¶ 6-15. Plaintiff states that Sheriff Cochran refused to give Plaintiff a copy of an associated report and that a North Carolina Magistrate refused to take any action regarding the incident. Id. at ¶¶ 16-18.

On March 17, 2017, Plaintiff had interactions with a Bryson City police officer and North Carolina State Trooper Aaron Ammons. These interactions were the subject of Plaintiff's claims in Ammons.

In June of 2017, Plaintiff had another confrontation with Swain County deputies, this time regarding a report about a hunting dog that Plaintiff allegedly would not return to its owner. Id. at ¶¶ 21-32.

### B. December 15, 2018

On December 15, 2018, Swain County deputies responded to a dispute at 10811 Lower Alarka Road, Lot 2, Bryson City, North Carolina. Deputy Robinson and Deputy Holland arrested Huskey for possession of a firearm by a felon, felonious restraint, assault on a female, resisting a public officer, possession of marijuana paraphernalia, and possession of marijuana. Doc. 31-7 at 10; Doc. 31-2 at 2.

At some point between the time of his arrest and his arrival at the Swain County Detention Center, Huskey told Deputy Holland that "Cooper's Creek Gerry" had 100 pounds of explosives and wanted to pay him (Huskey) $10,000 to $15,000, and that Sheriff Cochran, Swain County Deputy Sheriff Doug Woodard, Trooper Ammons, and Deputy Robinson were "on the list." Doc. 31-7 at 10.

Deputy Holland informed Deputy Robinson of these statements. Doc. 31-2 at ¶¶ 6-7. Deputy Robinson knew that Huskey worked intermittently for Plaintiff at the Trout Farm, and that Plaintiff went by the name "Gerry." Doc. 31-7 at 10; Doc. 31-2 at ¶ 7.

Deputy Robinson then interviewed Huskey at the Swain County

7

Detention Center. Id. During that interview, Huskey stated that Plaintiff wanted him (Huskey) to "take out" Sheriff Cochran and that Plaintiff had shown Huskey a "back way" to Sheriff Cochran's house. Huskey also stated that Plaintiff would be able to obtain 100 pounds of explosives within two weeks, and that Huskey would receive anywhere from $10,000 to $15,000 to blow up Sheriff Cochran's house. Doc. 31-2 at ¶¶ 8-10. Additionally, Huskey was able to describe Deputy Robinson's house and family members. Doc. 31-7 at 11-12; Doc. 31-2 at ¶ 11.

Deputy Robinson also interviewed Woodard. Woodard claimed that she had viewed a text message from "Gerry" to Huskey about explosives. Doc. 31-2 at ¶13.

Deputy Robinson shared the information from these interviews with Agent Ashe and Agent Green. Doc. 31-2 at ¶ 14.

Agent Green and SBI Special Agent C.B. Brenzel ("Agent Brenzel") then interviewed Huskey. Doc. 31-7 at 12. Huskey told them that Plaintiff "had a friend that could get Composition 4 (C-4) and Detonation Cord (Det-Cord) and it would be here in approximately 2 weeks," that Plaintiff had asked Huskey to blow up Sheriff Cochran's house, and that "the device would be ready to go once he received it." Id. Huskey also told Agent Green and Agent Brenzel that he and Plaintiff "had exchanged text messages four or five times and there was a text message exchange on December 14, 2018 from [Plaintiff] to Huskey

8

referring to blowing up the Sheriff's house as well as payment." Id.

Agent Ashe then applied to a North Carolina Superior Court Judge for the First Search Warrant, which sought permission to search records for a telephone number ending in 5549 which was thought to be associated with Huskey, for evidence related to solicitation to maliciously use explosives. Doc. 31-4 at 6-7. The warrant was issued and executed.

### C. December 16, 2018

On December 16, 2018, Agent Ashe applied to a North Carolina Superior Court Judge for the Second Search Warrant, which sought permission to search Plaintiff's phone records, and the Third Search Warrant, which sought Huskey's phone records. Docs. 31-5 & 31-6.[4] Both warrants were issued and executed.

Also on December 16, 2018, Agent Ashe applied to a North Carolina Magistrate for the Fourth Search Warrant, seeking authority to search Plaintiff's residence for evidence related to conspiracy to commit first degree murder, solicitation to commit first degree murder, and solicitation to maliciously use explosives. Doc. 31-7.

The same day, Agent Ashe obtained the Arrest Warrant from the same

---

[4] The phone number referenced by the First Search Warrant was determined to be incorrect, and the records obtained did not show text messages between Plaintiff and Huskey. Doc. 31-5 at 12. The Third Search Warrant sought records associated with Huskey's correct phone number.

9

North Carolina Magistrate that issued the Fourth Search Warrant. Plaintiff was then arrested by Agent Ashe and transported to the Swain County courthouse for questioning. Doc. 38-5 at ¶¶ 39-40. While Plaintiff was there, other officers executed the Fourth Search Warrant at Plaintiff's residence. Doc. 38-5 at ¶ 42.

### D. Subsequent Events

Plaintiff states that "[a]ny and all charges and alleged charges" were dismissed and that he received a letter of exoneration from the District Attorney. Doc. 38-5 at ¶¶ 61, 63.

## V. Discussion

### A. Section 1983 Claim

To prevail on his § 1983 claim, Plaintiff must establish that he "was 'deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law.'" Austin v. Paramount Parks, Inc., 195 F.3d 715, 727 (4th Cir. 1999) (quoting Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40 (1999)); see also Smith v. Travelpiece, 31 F.4th 878, 882–83 (4th Cir. 2022) ("Section 1983 provides a federal cause of action to redress constitutional harms committed under color of state law").

#### 1. Sheriff Cochran

"'An official can be liable under § 1983 only where it is affirmatively

10

Case 1:22-cv-00009-WCM   Document 44   Filed 09/20/24   Page 10 of 19

shown that the official charged acted personally in the deprivation of [plaintiff's] rights.'" McKinney v. Cleveland Cnty. Bd. of Educ., No. 22-1697, 2023 WL 4637115, at *3 (4th Cir. July 20, 2023) (quoting Thomas v. City of Annapolis, 851 F. App'x 341, 347–48 (4th Cir. 2021), affirming McKinney v. Cleveland Cnty. Bd. of Educ., No. 3:20-CV-221-MOC-DSC, 2020 WL 6803846, at *7 (W.D.N.C. Nov. 19, 2020)).

Here, Sheriff Cochran was not present when Plaintiff was arrested and did not participate in the execution of the Fourth Search Warrant. He did not serve as an affiant on any of the Search Warrants, and, other than being identified as a target, is not mentioned in the statements of probable cause. See Doc. 31-7 at 10-11.

While Plaintiff contends that Sheriff Cochran directed Swain County deputies to coerce Huskey into making statements upon which the Search Warrants were based, Plaintiff has presented no factual support for that position.

### 2. Deputy Robinson

Like Sheriff Cochran, Deputy Robinson was not present when Plaintiff was arrested or when the Fourth Search Warrant was executed.

However, Deputy Robinson served as an additional affiant on the applications for the Search Warrants and was personally involved in the investigation of Plaintiff. Therefore, additional analysis is required. See United

11

States v. DeLeon, 979 F. 2d 761, 764 (9th Cir. 1992) ("The Fourth Amendment places restrictions and qualifications on the actions of the government generally, not merely on affiants."); Hart v. O'Brien, 127 F.3d 424, 448-49 (5th Cir. 1997) ("A governmental official violates the Fourth Amendment when he deliberately or recklessly provides false, material information for use in an affidavit in support of a search warrant, regardless of whether he signs the affidavit.").

### a. Unlawful Search

"When an officer improperly obtains a search warrant using deceptive falsities or omissions and uses that ill-gotten warrant to search and seize property, the Fourth Amendment's right to be free from unreasonable searches and seizures is violated." Travelpiece, 31 F.4th at 884. To succeed on such a claim, the plaintiff must prove that the officer "made material false statements in his affidavit" or omitted material facts from the affidavit "with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading." Miller v. Prince George's County, MD., 475 F.3d 621, 627 (4th Cir. 2007) (citing Franks v. Delaware, 438 U.S. 154, 171 (1978) and United States v. Colkley, 899 F.2d 297, 300 (4th Cir. 1990) (internal quotation marks omitted)).

In this case, Plaintiff noted at the hearing that although he did not believe the First, Second, or Third Search Warrants were valid, his unlawful

12

search claim challenges only the Fourth Search Warrant.

The statement of probable cause supporting the Fourth Search Warrant included a recitation of Deputy Holland's reported conversation with Huskey following Huskey's arrest, Deputy Robinson's subsequent interviews with Huskey and Woodard, and the interview of Huskey by Agent Green and Agent Brenzel. See Doc. 31-7 at 10-12; see also Doc. 42-1 at ¶ 5.

Plaintiff does not argue that Huskey did not make the statements to the officers but rather contends that Defendants coerced Huskey into making those statements. Consequently, says Plaintiff, every statement pertaining to Plaintiff that was attributed to Huskey and that appears in the statement of probable cause supporting the Fourth Search Warrant should be viewed as false.

However, Plaintiff has offered no evidence that tends to support his position. Instead, he relies on a history of tense interactions between himself and law enforcement, see Doc. 38-5, and a recording in which, according to Plaintiff, Huskey "admits that the Defendants forced him by using physical force and threats to create the story that Huskey had conspired with someone to steal" Sheriff Cochran's campaign signs. Doc. 38-5 at 7.[5]

---

[5] Plaintiff also asserts, without factual support, that Deputy Robinson "ghost wrote" the statement of probable cause. Deputy Robinson is listed as an additional affiant but Agent Ashe's Declaration indicates that the application for the Fourth Search Warrant was prepared by Agent Ashe. Doc. 42-1 at ¶ 5.

13

In short, while Plaintiff asks the Court to disregard all the statements attributed to Huskey regarding Plaintiff, Plaintiff has not pointed to evidence that would allow the Court to do so.[6]

### b. Unreasonable Seizure

"'The Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected without probable cause is unreasonable.'" Decina v. Horry Cnty. Police Dep't, No. 21-2171, 2023 WL 2136376, at *6 (4th Cir. Feb. 21, 2023) (quoting Brooks v. City of Winston-Salem, 85 F.3d 178, 183 (4th Cir. 1996)). "To succeed [on an unreasonable seizure claim], a plaintiff must show that 'the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in [the] plaintiff's favor.'" Harrington-Wall v. City of Monroe, No. 3:19-cv-00366-FDW-DSC, 2020 WL 6153086, at *3 (W.D.N.C. Oct. 20, 2020) (quoting Humbert v. Mayor & City Council of Balt. City, 866 F.3d 546, 555 (4th Cir. 2017), as amended (Aug. 22, 2017)).

---

[6] To support such a claim, a plaintiff must also demonstrate that the false statements or omissions were "material, that is, necessary to a neutral and disinterested magistrate's authorization of the search." Evans v. Chalmers, 703 F.3d 636, 649–50 (4th Cir. 2012) (quoting Franks, 438 U.S. at 155-156 (1978) and Miller, 475 F.3d at 628 (4th Cir. 2007) (internal quotation marks omitted). Here, because Plaintiff has presented no evidence that supports his position regarding the alleged falsity of Huskey's statements, the Court does not reach the materiality element.

14

"Probable cause is not a high bar, and it must be assessed objectively based on a totality of the circumstances, including common-sense conclusions about human behavior." United States v. Jones, 952 F.3d 153, 158 (4th Cir. 2020).

Here, Agent Ashe served as the affiant on the Fourth Search Warrant and was also listed as the complainant on the Arrest Warrant. Doc. 31-10. A separate affidavit was not provided in support of the Arrest Warrant, but the Arrest Warrant was issued by the same North Carolina Magistrate that issued the Fourth Search Warrant, and on the same day. See N.C. Gen. Stat. § 15A-304(d) (warrant for an arrest requires a showing of probable cause through affidavit or oral testimony under oath); see also Anderson v. Caldwell Cnty. Sheriff's Off., 524 F. App'x 854, 861–62 (4th Cir. 2013) ("Moreover, the fact that no contemporary record exists to show what Stafford said to the magistrate when seeking the arrest warrant does not undermine the showing in this record of the existence of probable cause.").

The undersigned is persuaded that the arrest of Plaintiff was made pursuant to legal process supported by probable cause. In that regard, the information that was submitted in support of the Fourth Search Warrant also provided probable cause to support the issuance of an arrest warrant for Plaintiff on the charge of conspiracy to commit first degree murder. See Doc. 31-10. See Wolfe v. City of N. Charleston, No. 21-7335, 2022 WL 2752362, at

15

Case 1:22-cv-00009-WCM   Document 44   Filed 09/20/24   Page 15 of 19

*3 (4th Cir. July 14, 2022); Buchanan v. Cochran, No. 2:09-cv-19-RJC, 2012 WL 273730 at *3 (W.D.N.C. Jan. 31, 2012) ("If the Plaintiff does not show that probable cause was lacking, summary judgment in favor of the officer is appropriate") (internal quotation omitted).[7]

Accordingly, Defendants' Motion for Summary Judgment will be granted with respect to Plaintiff's Section 1983 claim.

### B. Conspiracy Claim[8]

#### 1. 42 U.S.C. § 1985

"The elements of a § 1985 civil conspiracy claim are: (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy." McDaniel v. Liberty Mut. Ins. Co., No. 3:21-cv-610-FDW-DSC, 2021 WL 6061822, at *3 (W.D.N.C. Nov. 30, 2021) (citing

---

[7] An analysis of whether probable cause existed with respect to the other charges for which Plaintiff was arrested is not necessary. See Wilkerson v. Hester, 114 F. Supp. 2d 446, 456 (W.D.N.C. 2000); Johnson v. City of Greenville, No. 4:15-CV-00064, 2015 WL 7854564, at *7 (E.D.N.C. Dec. 3, 2015) ("Having concluded that there was probable cause to arrest for at least one charge, the court need not determine whether the officers also had probable cause to arrest plaintiff for the other charges.").

[8] Although Plaintiff's Complaint appears to assert a claim for conspiracy only under Section 1985, the parties' briefing, as well as their arguments during the hearing, referenced both Section 1983 and Section 1985.

Thomas v. The Salvation Army S. Territory, 841 F.3d 632, 637 (4th Cir. 2016)).

Here, Plaintiff has made no allegation or showing that Defendants were "motivated by a specific class-based, invidiously discriminatory animus."

Therefore, summary judgment with respect to Plaintiff's conspiracy claim under Section 1985 is appropriate.

### 2. 42 U.S.C. § 1983

To establish a Section 1983 conspiracy claim, "a plaintiff 'must present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the] deprivation of a constitutional right.'" Massey v. Ojaniit, 759 F.3d 343, 357–58 (4th Cir. 2014) (quoting Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996)). A plaintiff has "a weighty burden to establish a civil rights conspiracy." Hinkle, 81 F.3d at 421.

Here, as discussed above, there was no deprivation of Plaintiff's Fourth Amendment rights.

In addition, Plaintiff has not produced evidence from which the Court could reasonably infer that a conspiracy existed. See Hinkle, 81 F.3d at 421 (although direct evidence of a meeting of the minds is not required, the plaintiff's forecast of evidence "must, at least, reasonably lead to the inference that [the defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan").

17

Rather, Plaintiff again relies on the audio recording which he believes indicates Sheriff Cochran attempted to pressure Huskey to admit stealing the Sheriff's campaign signs, Plaintiff's support for Sheriff Cochran's political opponent in a previous election, and Plaintiff's position as a "known antagonist" of the Sheriff's Department, arguing that this information would allow a jury to conclude reasonably that Sheriff Cochran coerced Huskey into informing law enforcement that Plaintiff hired Huskey to commit first degree murder. This speculation, however, is not the same as facts.

Therefore, summary judgment is also appropriate with respect to this claim. Hinkle, 81 F.3d at 423 ("There is a reason why we do not allow this level of conjecture to determine lawsuits: such adventures of the mind tend to be unreliable. [Plaintiff]'s conspiracy claim was ripe for an adverse summary judgment determination; it was based upon a theory without proof. [Plaintiff]'s circumstantial evidence was probative of a conspiracy only through speculation and the piling of inferences"); Penley v. McDowell Cnty. Bd. of Educ., 876 F.3d 646, 658 (4th Cir. 2017) ("'direct evidence of a conspiracy is not always available' but the court 'cannot use this fact as an excuse to forgive Appellant['s] failure to prove [his] case.'") (quoting Hinkle, 81 F.3d at 423).[9]

---

[9] Considering these rulings, the Court does not reach Defendants' argument that they are entitled to qualified immunity.

**IT IS THEREFORE ORDERED THAT** Defendants' Motion for Summary Judgment (Doc. 30) is **GRANTED**, and Plaintiff's claims against Defendants are hereby **DISMISSED WITH PREJUDICE.**

Dated: September 20, 1024

W. Carleton Metcalf
United States Magistrate Judge